UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

TERRY J. CARROLL,

                    Plaintiff,                              Case No. 14-cv-14514

v                                                           Honorable Thomas L. Ludington

ONEMAIN FINANCIAL INC.,

                    Defendant.
_____/

**ORDER SUSTAINING IN PART PLAINTIFF'S OBJECTIONS, REJECTING IN
PART THE REPORT AND RECOMMENDATION, GRANTING DEFENDANT'S
MOTION TO DISMISS, AND DISMISSING COMPLAINT WITHOUT PREJUDICE**

        This matter is before the Court on Magistrate Judge Patricia Morris's Report and

Recommendation on Defendant[1] OneMain Financial and OneMain Financial Holdings' Renewed

Motion to Dismiss and/or Compel Arbitration pursuant to Rule 12(b)(1). ECF No. 20. In the

report and recommendation, Judge Morris recommends dismissing Plaintiff Terry Carroll's

complaint and compelling arbitration. ECF No. 24.  Plaintiff Carroll timely filed objections. ECF

No. 28.     Plaintiff Carroll's objections will be sustained in part and the report and

recommendation will be rejected in part.  However, because Plaintiff's claims are encompassed

by a binding arbitration agreement, Defendant's motion to dismiss/compel arbitration will be

granted, and the parties will be compelled to arbitrate.

**I.**

**A.**

---

[1] In its Renewed Motion to Dismiss and/or Compel Arbitration, Defendant states that it has been improperly
identified as OneMain Financial Inc., a.k.a. Citigroup Inc. and OneMain Financial Holdings Inc., and is in fact
CitiFinancial Servicing L.L.C.  For this reason, Defendant will be referred to as the singular "Defendant" instead of
the plural "Defendants."

Defendant does not dispute Plaintiff's factual allegations and, therefore, the facts alleged in Plaintiff's amended complaint, ECF No. 11, are presumed true. Plaintiff claims that he received a loan at 23.99% interest from Defendant on or around August 14, 2012. *Id.* at 1. Plaintiff subsequently noticed that his billing statements from Defendant were arriving at his Pinconning, Michigan address only three to four days before they were due to be paid, and that Defendant was posting $15.00 late fees on his statements, even though Plaintiff had made all of his payments "on time and in excess of the amount due." *Id.*

Around December of 2012, Plaintiff discovered that Defendant was inaccurately reporting his credit information in his credit reports, giving the appearance that Plaintiff was not making his loan payments on time. *Id.* Plaintiff then contacted Defendant on December 9, 2012 via certified US Mail to inform Defendant that he was disputing the information it had provided in his credit report. Plaintiff did not receive any response. *Id.* at 2. Plaintiff attempted to contact Defendant a number of additional times over the next 22 months, but never received any response. *Id.* At some point, Defendant marked Plaintiff's credit report as "Dispute Resolved" even though the dispute had not been resolved. *Id.* Plaintiff continues to dispute this information with Defendant and the three national credit reporting agencies. *Id.*

**B.**

On November 26, 2014, Plaintiff Carroll filed his pro se complaint against Defendant, alleging violations of the Fair Credit Report Act ("FCRA"). ECF No. 1. Defendant filed a motion to dismiss and/or compel arbitration on March 17, 2015, arguing that Plaintiff's claims are covered by an arbitration agreement and that the Court should dismiss Plaintiff's complaint and compel arbitration. ECF No. 9. Two days later, on March 19, 2015, Carroll filed a second complaint that set forth additional causes of action under the FCRA against Defendant, but did

not identify the document as an amended complaint. ECF No. 11.   On April 30, 2015, Judge

Morris issued a text-only order, finding Defendant's motion to dismiss moot and construing

Carroll's second complaint as an amended complaint.

Defendant then filed a renewed motion to dismiss pursuant to Rule 12(b)(1) and/or

compel arbitration on May 28, 2015. ECF No. 20.  In its renewed motion to dismiss, Defendant

argues that in connection with entering into the loan agreement at issue on August 14, 2012,

Plaintiff also executed an express Arbitration Agreement. ECF No. 20 at 1. The Arbitration

Agreement, attached to Defendant's renewed motion as Exhibit A, specifically provides:

> This Arbitration Agreement provides that all disputes between borrower and
> certain other persons on the one hand and lender and certain other persons and
> entities on the other hand, except those specified below, will be resolved by
> mandatory, binding arbitration. You thus give up your right to go to Court to
> assert or defend your rights (except for matters that are excluded from arbitration
> as specified below). Your rights will be determined by a neutral arbitrator and not
> a judge or jury. You are entitled to a fair hearing, but the arbitration procedures
> are simpler and more limited than rules applicable in Court.

Exhibit A, 4.  The Arbitration Agreement also states:

> In consideration of lender making the extension of credit described in the
> instrument evidencing your loan ("Note") and other good and valuable
> consideration, the receipt and sufficiency of which is acknowledged by both
> parties, *you and we agree that either you or we have an absolute right to demand
> that any claim be submitted to an arbitrator in accordance with this Arbitration
> Agreement*. If either you or we file a lawsuit, counter claim or other action in
> court, the other party has the absolute right to demand arbitration following the
> filing in such action.

*Id*. (Emphasis added).

On June 29, 2015, Judge Morris issued a report and recommendation, referring to

Plaintiff's initial, November 26, 2014 complaint, "(Doc. 1)." The report and recommendation

recommends granting Defendant's motion to dismiss applying the 12(b)(6) standard, dismissing

Plaintiff Carol's complaint, and compelling arbitration. ECF No. 24.   After obtaining an

- 3 -

extension of time, Plaintiff timely filed objections to the report and recommendation on July 23, 2015.

## II.

Pursuant to Federal Rule of Civil Procedure 72, a party may object to and seek review of a Magistrate Judge's report and recommendation. *See* Fed. R. Civ. P. 72(b)(2). If objections are made, "[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3). Objections must be stated with specificity. *Thomas v. Arn*, 474 U.S. 140, 151 (1985) (citation omitted).

De novo review requires at least a review of the evidence before the Magistrate Judge; the Court may not act solely on the basis of a Magistrate Judge's report and recommendation. *See Hill v. Duriron Co.*, 656 F.2d 1208, 1215 (6th Cir. 1981). After reviewing the evidence, the Court is free to accept, reject, or modify the findings or recommendations of the Magistrate Judge. *See Lardie v. Birkett*, 221 F. Supp. 2d 806, 807 (E.D. Mich. 2002).

## III.

As an initial matter, Defendant did not bring a 12(b)(6) motion – failure to state a claim upon which relief can be granted – but a 12(b)(1) motion claiming lack of subject-matter jurisdiction. Under Rule 12(b), "a motion asserting any of these defenses must be made before pleading if a responsive pleading is allowed." However, because a court cannot decide the merits of a case that it does not have subject matter jurisdiction to hear, courts have held "[t]he existence of subject matter jurisdiction may be raised at any time, by any party, or even *sua sponte* by the court itself." *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005). "Moreover, a trial court has broad discretion in what to consider in deciding whether subject matter jurisdiction exists in a particular case." *Ogle v. Church of God*, 153 Fed.Appx. 371, 375 (6th Cir. 2005).

Here, Plaintiff argues that Defendant's renewed motion to dismiss/compel arbitration is untimely.  ECF No. 28, Objection 3.  However, as noted above, "[t]he existence of subject matter jurisdiction may be raised at any time, by any party, or even sua sponte by the court itself." *In re Lewis*, 398 F.3d 735, 739 (6th Cir. 2005).  In other words, Rule 12(b)(1) motions are not waivable, and the court must consider such a motion at any time.  *See* Fed. R. Civ. P. 12(h)(3).  Consequently, even though Defendant filed its renewed motion after filing an answer and after more than 21 days had passed, Defendant's 12(b)(1) motion is timely.

Plaintiff, as the party invoking subject matter jurisdiction, bears the burden of persuading the court that subject matter jurisdiction exists in each case. *Dismas Charities, Inc. v. U.S. Dep't of Justice*, 401 F.3d 666, 671 (6th Cir.2005).  A facial attack on subject matter jurisdiction challenges the sufficiency of the pleading, and in reviewing such an attack, the court takes the allegations in the complaint as true. *Ohio Nat'l Life Ins. Co*., 922 F.2d at 325. Where the defendant brings a factual attack on subject matter jurisdiction, no presumption of truth applies to the allegations contained in the pleadings, and the court may consider documentary evidence in conducting its review. *Id*.

It is true that Defendant's Motion "would more properly have been brought under Rule 12(b)(6), because the existence of a valid arbitration clause does not technically deprive the Court of subject matter jurisdiction." *Liveware Publishing, Inc. v. Best Software,* Inc., 252 F.Supp.2d 74, 78 (D.Del.2003); *see also Johnson Associates Corp. v. HL Operating Corp.,* 680 F.3d 713, 718 (6th Cir. 2012). An arbitration agreement simply "requires the Court to forego the exercise of jurisdiction in deference to the parties' contractual agreement to address in another forum those disputes which fall within the scope of the agreement to arbitrate." *Liveware Publ'n,* 252 F.Supp.2d at 78–79.  Despite this, courts have allowed parties to receive the equivalent

remedy upon making Rule 12(b)(1) motions. *See Moore v. Ferrellgas, Inc.*, 533 F.Supp.2d 740 (W.D. Mich. 2008); *Nova CTI Caribbean v. Edwards*, No. CIV. A. 03–5319, 2004 WL 35759, at *2 (E.D.Pa. Jan. 8, 2004); *Thompson v. Nienaber*, 239 F.Supp.2d 478, 483 (D.N.J.2002). "The distinction between Rule 12(b)(1) and Rule 12(b)(6) is immaterial because based on either ground, the Arbitration Agreement requires arbitration of Plaintiff's claims…." *Moore*, 533 F.Supp at 744-45.

## A.

The FAA was enacted in response to the hostility of American courts to enforcing arbitration agreements in an effort to place arbitration agreements upon the same footing as other contracts. *See Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 11 (2001). In his seventh and eight objections, Plaintiff claims that there is no subject matter jurisdiction for an arbitrator to rule on or enforce Federal Law. However, section 2 of the FAA provides:

> A written provision in any… contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction…shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2. "By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213 218, (1985) (citing 9 U.S.C. §§ 3–4). An arbitor's power to hear claims does not arise from law governing jurisdiction, but from the contract of the parties. The pertinent question is whether there is a valid agreement between the parties and whether the specific dispute falls within the substantive scope of the agreement. *Andrews v. TD Ameritrade, Inc.*, 596 Fed. App'x 366, 370 (6th Cir. 2014).

There is a presumption that arbitration agreements are valid and enforceable. *See Shearson/Am. Exp., Inc. v. McMahon*, 482 U.S. 220, 226 (1987). Plaintiffs may rebut the presumption of validity only by raising generally applicable state-law contract defenses such as fraud, forgery, duress, mistake, lack of consideration or mutual obligation, and unconscionability. *See Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). A party seeking invalidation of an arbitration agreement bears the burden of providing that the arbitration provision is invalid or does not encompass the claim at issue. *See Green Tree Fin. Corp.-Alabama v. Randolph,* 531 U.S. 79, 92 (2000). As noted above, "an enforceable contractual right to compel arbitration operates as a quasi-jurisdictional bar to a plaintiff's claims, providing grounds for dismissal of the suit." *Johnson Associates*, 680 F.3d at 718.

The Sixth Circuit uses a four factor test to determine if a case should be dismissed and arbitration compelled: (1) whether the parties agreed to arbitrate; (2) the scope of the agreement to arbitrate; (3) if federal statutory claims are involved, whether Congress intended for those claims to be arbitrable; and (4) if only some of the claims are subject to arbitration, whether the nonarbitrable claims should be stayed pending arbitration. Fazio v. Lehman Bros., Inc., 340 F.3d 386, 392 (6th Cir. 2003). In the present case, all of these factors are satisfied.

**B.**

In his response to Defendant's motion and his objections to the magistrate judge's report and recommendation, Plaintiff contests both the validity and the application of the arbitration agreement. Plaintiff also argues that policy considerations weigh against compelling arbitration, both in this case and in general. These objections will be addressed in turn.

**i.**

- 7 -

In contesting the validity of the arbitration agreement, Plaintiff first claims the he does not recall signing any arbitration agreement and denies signing such a document. ECF No. 28, Objections 4, 12.  Plaintiff also argues that he did not meaningfully consent to the agreement, and that the agreement is unconscionable. *Id.*  These arguments are without merit.

First, Plaintiff does not claim that he did not sign the security agreement that is at the heart of this matter, and admits that a security agreement exists between the parties. Defendant provided a copy of both the security agreement and arbitration agreement as an exhibit to its renewed motion to dismiss/compel arbitration. *See* ECF No. 20, Exhibit A. The security agreement itself contains a provision regarding arbitration, stating "Borrower… and Lender have entered into a separate Arbitration Agreement on this date, the terms of which are incorporated and made a part of this [agreement] by this reference." *Id.* at 3.  This arbitration provision is conspicuously placed in a full border, and Plaintiff Carroll's uncontested signature is directly below it. *Id.*

Second, Plaintiff has failed to introduce any evidence supporting his claim that he did not sign the arbitration agreement. All of the facts presented point to the contrary conclusion. Failure to recall signing a document does not affect the validity of the document. *See Martyn v. J.S. Korth & Co.* 2011 WL 2144618 (W.D.Mich. 2011).  With regard to Plaintiff's demands to see the original ink-signed document, "it is well established that photocopies are allowed into evidence as if they were originals." *U.S. v. Petroff-Kline*, 557 F.3d 285, 291 (6th Cir. 2009) (invoking Fed. R. Evid. 1003).

In sum, Plaintiff does not contest his signature on the security agreement itself and has presented no facts or evidence to suggest that he was not the person who signed the accompanying arbitration agreement. Even at the motion to dismiss stage, "[f]actual allegations

must be enough to raise a right to relief above a speculative level. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544 556 (2007). In the absence of any other facts casting doubt on whether Plaintiff signed the agreement, his lack of recollection of signing the agreement is insufficient to render the agreement unenforceable. *See Emeronye v. CACI Intern., Inc.,* 141 F.Supp. 2d 82, 86 (D.C. 2001).

Plaintiff's claims that he did not meaningfully consent to the arbitration agreement are similarly without merit. Plaintiff has failed to show any special circumstances that would negate his knowing and voluntary consent to the agreement or overcome the presumption of validity that applies to arbitration agreements. *See Shearson/Am. Exp., Inc.,* 482 U.S. at 226.

To the extent Plaintiff posits that the agreement was unconscionable in general, this assertion alone, without any supporting argument, is insufficient to undermine enforcement of the arbitration agreement. *See Inetianbor v. Cashcall*, Inc., 923 F. Supp. 2d 1358, 1363 (S.D. Fla. Feb. 15, 2013) (enforcing an arbitration agreement over a plaintiff's unsupported assertions of unconscionability.) Unlike the California state case that Plaintiff points to in his response, Plaintiff here has pled no facts to suggest that Defendant made subsequent, substantive, unilateral changes to the arbitration agreement. Plaintiff's contention that he should not be compelled to arbitration in a "distant state" is similarly unsupported. ECF No. 28, Objection 12. The arbitration agreement clearly states that "[t]he arbitration shall be conducted in the county of Your residence, unless all parties agree to another location." ECF No. 20, Exhibit A.

**ii.**

Plaintiff next argues that the arbitration agreement does not apply to his claims. Here, the arbitration agreement compels arbitration as to any "claim" which it defines as any "case, controversy, dispute, tort, disagreement, lawsuit, or claim now or hereafter existing between You

and Us." ECF No. 20 at ID 112. The agreement then provides a list of claims the agreement contemplates, which "includes, without limitation, anything related to: This Note, this Agreement . . . Any Credit Transaction . . . Any documents or instruments that contain any information about any Credit Transaction, Insurance, Service or Product…Any federal or state statute or regulation." *Id*.  In addition, the arbitration agreement lists claims "[e]xcluded from Arbitration," none of which apply to the instant case. *Id*.

Plaintiff asserts that his claims are not covered by the arbitration agreement because Defendant's actions amount to a civil rights violation and because the dispute is not between a borrower and lender, but between a consumer and furnisher of information. ECF No. 28, Objections 9, 10, 13.  These objections are without merit. Plaintiff's claims that Defendant furnished false information, failed to investigate, failed to provide notice, and failed to comply with the FCRA are all intrinsically related to the credit relationship that forms the basis of Plaintiff and Defendant's relationship.  Plaintiff admits that he received a loan at 23.99% interest from Defendant, thus admitting the existence of a borrower-lender relationship between the parties. The only reason Defendant was furnishing information to third parties under the FCRA is because of the borrower and lender relationship that existed between the parties.

Whether the claims under the FCRA amount to civil rights violations is inconsequential. Plaintiff's claims are related to and arise out of the note and security agreement, they do not fall under any express exception under the arbitration agreement, and there is no evidence that Congress did not intend claims of this sort to be subject to agreed-upon arbitration. The fact that the claims arise under a federal statute alone does not provide a reason to depart from the presumption in favor of arbitration. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473, U.S. 614, 627 (1985). *See also Mann v. Equifax Information Services*, LLC, No. 12-cv-

14097, 2013 WL 3814257, at *9 (E.D. Mich. July 22, 2013) (holding that an arbitration agreement applied to plaintiff's FCRA claim).

In an attempt to show the ambiguity of the arbitration agreement, Plaintiff sets forth a parade of hypothetical disputes that could arise between the parties. *See* ECF No. 28, Objection 11. Specifically, Plaintiff inquires:

> Does this cover getting hurt on defendants [sic] property, or an employee making improper sexual advances toward me, or discriminates due to race, religion, sex …, or what if defendant punches me in the nose or shoots me. Is that covered? All is vague and Ambiguous. Does this last forever?

*Id.* These questions do not need to be answered at this time. This Court is only empowered to decide actual cases and controversies, not hypothetical disputes. U.S. Const. art. III. Sec. 2. For present purposes, it is sufficient that Plaintiff's actual claims fall within the purview of the arbitration agreement.

### iii.

In his remaining objections, Plaintiff argues that policy considerations weigh against enforcing arbitration in general, and specifically in this case. Plaintiff argues that H.R. Bills 1054 and 3607 amended the Truth in Lending Act to limit pre-dispute mandatory arbitration agreements between consumers and lenders. Plaintiff also argues that House Resolution 5162 amended the Consumer Credit Protection Act to treat arbitration clauses unilaterally imposed on consumers as unfair and deceptive trade practices, and that S-192 amended the Federal Arbitration act to make pre-dispute mandatory arbitration agreements in consumer credit card contracts invalid and unenforceable. However none of the Bills Plaintiff cites were introduced into law. Accordingly, the bills did not in fact amend the Truth in Lending Act, the Consumer Credit Protection Act, or the Federal Arbitration Act. Thus, pre-dispute mandatory arbitration agreements between consumers and lenders are not invalid or unenforceable under current law.

Plaintiff also argues that private arbitration is a rigged, bias, and fraudulent venue. Plaintiff further argues that arbitration agreements in credit agreements are unconscionable and unenforceable to the extent they prohibit class treatment of small individual claims. However, it is not for Plaintiff or for this Court to determine the appropriateness of arbitration forums in general. Instead, through enacting the FAA, Congress adopted a policy in favor of promoting arbitration. 9 U.S.C. § 2. This policy has been repeatedly confirmed and expanded by the United States Supreme Court. *See, e.g. Circuit City Stores*, 532 U.S. at 111. In enforcing arbitration contracts, this Court is bound to act in accordance with the rules adopted by both Congress and the United States Supreme Court.

Plaintiff's final objection is that policy considerations weigh against enforcing arbitration in this case. Specifically, Plaintiff argues that Defendant knew Plaintiff was trying to contact it and ignored him, and then proceeded to mark Plaintiff's credit report as Dispute Resolved even though Defendant knew the dispute had not been resolved. However, this argument goes to the merits of Plaintiff's claim, not to the appropriateness of enforcing an arbitration contract between the parties. Therefore, this objection is irrelevant to the question of Plaintiff's claims should be submitted to arbitration.

## VI.

Section 4 of the FAA provides that where a party involves the jurisdiction of a federal court over a matter that the court could adjudicate but for the presence of an arbitration clause, "[t]he court shall . . . direc[t] the parties to proceed to arbitration in accordance with the terms of the agreement" and the arbitration must take place "within the district in which the petition for an order directing such arbitration is filed." 9 U.S.C. §4. Where all of a party's claims are subject to arbitration, courts may properly dismiss the complaint rather than stay proceedings. *Green v.*

*Ameritech Corp.*, 200 F.3d 967, 973 (6th Cir. 2000). Because all of Plaintiff's claims are within the scope of the arbitration agreement, the complaint will be dismissed without prejudice.

**VII.**

Accordingly, it is **ORDERED** that Plaintiff Carroll's objections, ECF No. 28, are **SUSTAINED IN PART**.

It is further **ORDERED** that the report and recommendation, ECF No. 24, is **REJECTED IN PART**.

It is further **ORDERED** that Plaintiff's complaint is **DISMISSED without prejudice** as to his rights to pursue his claims through arbitration pursuant to the terms of the parties' arbitration contract.

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

Dated: November 30, 2015

---

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on November 30, 2015.

s/Michael A. Sian
Michael A. Sian, Case Manager

---